CHIEF JUSTICE WILLIAMS
delivered the opinion of the court.
This is on a motion to file a petition in this court, in the nature of a bill of review, to have this court to correct alleged errors in its own previous decisions, in some of which a petition for a rehearing was filed, considered, and overruled, and could have been filed in every one.
Various creditors of Beazley sued out attachments, and had them levied on his personal and real estate, which *425 was ordered to be sold — Ms farm being bought at such judicial sale by Mershon.
Although proceeded against as a non-resident and as a Confederate soldier, an appeal was prosecuted to this court to reverse the first judgment, and which this court did reverse December 22, 1864, saying therein, however, “that the reversal of the judgments in these eases will not avoid the sale” Mershon, the purchaser, was not a party, however, to this appeal.
An appeal was subsequently prosecuted by Beazley to set aside and vacate the sale and its confirmation, to which Mershon was a party, and it was affirmed by this court.
Beazley, on further proceeding and allegations, the proceedings having been changed from those in rem to-those in personam since his first appeal, resisted a recovery of much of his alleged indebtedness, and denied the regularity and validity of the several proceedings «of the now consolidated suits against him, which resulted in further final orders, from which he prosecuted an appeal to this court, and which it finally disposed of April 19, 1867, by a reversal.
The main error complained of was the rejection of his proffered answer setting out these things. This court, in its opinion showing that it was offered, under all the circumstances, within reasonable time, said: “It opened the whole case except as to the sale, and opened it for litigation in personam instead of in rem; and should the appellant finally succeed in quashing the attachments, or defeating the claims of any of the creditors to any extent, the sales standing, his remedy for reparation pro tanto may be on the bonds.”
On February 13, 1866, Beazley filed an original petition, among many other things charging a fraudulent *426 combination between his attaching creditors and Mershon, the purchaser, to sell and sacrifice his farm, upon which issues were made and evidence taken and judgment rendered; among' other things refusing to set aside Mershon’s sale.
Beazley prosecuted an appeal from this judgment, which this court, January 9, 1869, affirmed as to Mershon’s purchase, but reversed as to other things. A rehearing was asked, and overruled as to this June —, 1869.
After this sale has been incidentally recognized in every appeal, beginning with the one of December, 1864, and twice directly adjudicated by this court on direct appeal, without presenting any new matter or cause foreign from the records before this court, we are now by this to us novel proceeding asked to review all these former decisions as well as the last one. It has often been decided that no bill of review lies, after an appeal to this court, for matters existing before it. (Brewer v. Bowman, 3 J. J. Mar. 493; Benson v. Outten’s heirs, 5 J. J. Mar. 609; Mitchell v. Berry, 1 Metcalfe, 602; Mason v. Mason, 5 Bush, 187.)
Bills of review are appropriate remedies in the court of original jurisdiction, where the original decree was rendered, and no other (Hawkins v. Lambert, 18 B. Mon. 670), and is not barred if the facts upon which it is founded be discovered subsequent to the affirmance of the decree by this court (W. & A. Singleton v. Singleton, 8 B. Mon. 368); and persons interested not made parties may even prosecute such bill for irregularities appearing in the record. (Same case; Clarkson et al. v. Morgan, devisee, 6 B. Mon. 452; Alexander v. Slavens, 7 B. Mon. 355.)
By section 579, Civil Code, “the court in which a judgment or final order has been rendered or made shall have power, after the expiration of the term, to vacate or *427 modify such judgment ox- order,” for eight specified causes, which fully embrace evexy cause for a bill of review.
There has been, however, no authority fouxxd in the Code, statutes, or commoxx law for a mere appellate court without original jurisdiction to entertain bills of review of its owix decisioxxs. This court passes upon the error’s of the lower coux’t, and the Code provides for a petition for a rehearing withiix thirty days for any assigned ex’rors which it may have fallen into.
But when it has passed upon the record, axxd then upon a petition for a reheaxixxg, if one has been presented, and the term has adjourned, the cause is wholly beyond its reach. If after all these things have transpired this coux’t could again review and change its own decisions, when would litigatioxx cease? It would at once introduce an uncertainty and delay in the security of judgments axxd titles exceedingly disturbing and disastrous to the entire commuxxity of the state, wholly repugnant to the genius, of our statutes of lixnitations and repose, not only in the prosecuting of appeals, but as to everything else. The repose inspired by a sense of secuxúty in titles and the end of litigatioxx is an ultimatum which has beexx soxxght by every wise, well-regulated, and enlightened government.
All human tribunals may err, but there must be an ultimate court ixx all governments from whose decision there can be xxo appeal, and which shall alike be binding on the parties and their pxivies, and the courts, and itself, for without this there is an end to all law, all repose, all government.
Believing that such a proceeding is both xxnwise and without authority of law, the petition for a review is rejected, and the motion to file it is ovex’ruled.